Mr. Justice Hagneb
delivered the opinion of the Court:
The traverser was indicted under Section 5467 of the Revised Statutes of the United States, the first portion of which declares that—
“Any person employed in any department of the postal service who shall secrete, embezzle, or destroy any letter, packet, bag, or mail of letters * * * containing any note, bond, draft, check, warrant, revenue stamp, &e., &c.,” shall be punished in a certain way, and then says:
“Any such persan who shall steal or'take any of the things aforesaid out of any letter, packet, bag, or mail of letters which shall have come into his possession, either in the course of his official duties or in any other manner whatever, and provided the same shall not have been delivered to the *106 party to whom it is directed, shall be punishable by imprisonment at hard labor for not less than one year nor more than five years.”
The first count of the indictment states that the defendant was employed as' a clerk in the postal service of the United States, at Georgetown, on the 9th of November, 1887, and that at that date “ there came into the possession of him, the said James C. Eliason, in the regular course of the official duties of him, the said James C. Eliason, as such clerk, as aforesaid, a certain letter, which said letter was then and there inclosed in a certain envelope bearing a direction of the tenor following; that is to say—
“Master Jno. H. O’Neal, Student,
“ Georgetown College, Washington, D. G.”
which said letter was then and there intended to be conveyed by mail, and which said, letter then and there contained five certificates of the Register of the Treasury and the Treasurer of the United States-; each of said certificates being of the deposit of one silver dollar with the Treasurer of the United States, payable to the bearer of such certificates on demand; each of said certificates being of the value of $1 of the lawful money of the United States, which said letter had not at the time it so as aforesaid came into the possession of the said James 0. Eliason been delivered to the party to whom the same was directed.”
The second count of the indictment is not important.-
The first exception, after setting forth the evidence adduced to establish the several averments of the indictment as to the employment of the traverser as postal clerk, and the means adopted by the detectives to detect the thief, in consequence of repeated losses in the Georgetown office of letters addressed to students at Georgetown College, states that a decoy letter was dropped in the post-office at Georgetown, addressed to O’Negl, which was not delivered to him, and that the detectives arrested the traverser at the post-office, and on searching him found in his pocket-book a note, *107 known as a silver certificate, which they had marked and placed in the decoy letter. And the United States then jiroduced the marked note, identified as that found on the person of Eliason, and which reads in this way:
“This certifies that there has been deposited in the Treasury of the United States one silver dollar payable to bearer on demand.
“Washington, D. C. “C. A. Jordan,
“ Treasurer of the U. S.
“W. S. Rosecrans,
“Register of the Treasury.”
On the reverse are the words “United States silver certificate,” and offered it in evidence to sustain the charge in the indictment.
These silver certificates were first afithorized by the act of Congress of February 28, 1878 (20 Stat., 25, 26), Section 3 of which reads as follows:
“That any holder of the coin authorized by this act may deposit the same with the Treasurer or any Assistant Treasurer of the United States, in sums not less than $10, and receive therefor certificates of not less than $10 each, corresponding with the denominations of the United States notes. The coin so deposited for or representing certificates shall be retained in the Treasury for the payment of the same on demand. Said certificates shall be receivable for customs, taxes, and all public dues, and when so received may be reissued.”
On the 4th of August, 1886, a supplementary law was passed. The first act did not say what officer should issue the certificates, but the Act of 1886 (24 Stat., 222), says:
“ The Secretary of the Treasury is hereby authorized and required to issue silver certificates in denominations of one, two, and five dollars, and the silver certificates herein authorized shall be receivable, redeemable, and payable in like manner and for like purposes as is' provided for silver *108 certificates by the Act of February 28, 1878, * * * and denominations of one, two, and five dollars may be issued in lieu of silver certificates of larger denominations in the Treasury.”
The defendant objected that the note was not admissible in evidence, because it was not “a certificate of the deposit of one silver dollar with the Treasurer of the United States,” as alleged in the indictment; but, on the contrary, it certified “that there has been deposited in the Treasury of the United States one silver dollar payable to bearer on demand ; and this, it was insisted, constituted a variance between the averment and the offer. The court below overruled the objection and admitted the note in evidence.
It is insisted here that, as the Treasurer of the United States is not the Treasury, a deposit with the Treasurer, is not the same as a deposit in the Treasury — that the Treasury consists not only of the vaults at Washington, but also comprehends the vaults of the Government depositories in different places throughout the country, as the various sub-treasuries, the mint at Carson City, the depository at Boise City, &c., and that it might well be that the money stated in the certificate offered in evidence to have been deposited in the Treasury of the United States, may have been deposited in any one of these other depositories, instead of with “the Treasurer of the United States” as charged in the indictment; and that the indictment should have specified in which of these several places the deposit named in the certificate offered in evidence had in fact been made.
We do not concur in this argument. Whatever silver might be deposited in the Treasury of the United States, as the basis of these silver certificates, was in contemplation of law, deposited with the Treasurer; and whatever silver was deposited with the Treasurer, or any Assistant Treasurer, was, ipso facto, deposited in the Treasury, where the Act of 1878 expressly says: “It shall be retained for the payment of the certificates on demand; ” and for all the purposes of *109 the act we conceive that the certificate offered in evidence was sufficiently described in the indictment. But the certificate itself, declaring that the money has been deposited in the Treasury, is signed by Mr. Jordan, the Treasurer, and is therefore a sufficient declaration, by him that this money had been deposited with “the Treasurer of the United States.”
If the argument for the traverser were tenable, it would be requisite that each dollar certificate should contain a statement of the particular ' depository where the corresponding dollar in silver had- been deposited — an impracticable requirement. Whatever silver is received by the Treasurer, or any of his subordinates, goes into the Treasury forthwith and cannot remain in the personal possession of the particular officer who receives it for an instant; for he is obliged by law to deposit it in the Treasury of the United at the very moment he receives it. No person can pay any money to the Treasurer or any of the subordinate depositaries for public account, without, ipso facto, paying it into the Treasury of the United States. And there is no way in which any money can be deposited in the Treasury, except by paying it to the Treasurer or to one of the aforesaid subordinate depositaries. We think the expressions Treasurer and Treasury in these acts are used interchangeably. Besides, the indictment does not undertake to set forth the statute by recital, or even to state its tenor; but simply states, by way of description, “ each of said certificates being of the deposit of one silver dollar with the Treasurer of the United States.” For these reasons we think the certificate was properly admitted in evidence.
In the case of U. S. vs. Hardyman, 13 Peters, 176, to which we have been referred as supporting the objection, the traverser was indicted for receiving a stolen note, knowing it to have been stolen; described in the indictment “ as a promissory note called a Treasury note for the payment of $50, with interest at the rate of 1 per centum.” On the *110 production of the note in evidence, it was found that instead of the words “with interest at one per cent.,” the language of the note was, “with interest at M per centum.” It was moved to exclude the note from the jury for variance; and in the Supreme Court of the United States (to ■which the case was certified on division of opinion), one of the points considered by the court was: “Would it be proper to receive parol evidence for the purpose of explaining the meaning of the letter M and proving the practice and usage of the Treasury Department and officers of the Government, &c., in order to show the meaning attached to the letter M, and that by such meaning the Treasury note bears 1 mill per cent, interest, and not 1 per cent, interest.”
In speaking to this point, they say:
“We think, under the circumstances of the case, that parol proof may be received to show the meaning and effect ofi the letter M as inserted in the body of the note; and if such evidence shall establish a substantial variance between the note described in the indictment and the one offered in evidence, it must be fatal to the prosecution, -whether such evidence be submitted to the decision of the court or to the jury under the instructions of the court.”
But all the evidence that could have been offered in the case at bar “to show the meaning and effect” of the language used in the certificate was actually offered in the court below and ruled upon.
All these statutes were before the court below, as they are before us, and no evidence except those statutes exists that could illumine the question. The court below has already done what the Supreme Court said should have been done in Hardyman’s case, and we think the decision on the point was correct.
■ Second. The second exception shows that the detective, in narrating the occurrence in the post-office when he confronted the traverser, described his trepidation and the dropping of his hand from the pocket where the stolen *111 money was found, and had stated that it was in a pocketbook in his pocket, and in a general way he described the pocket-book. Then the exception proceeds:
“And upon cross-examination of said witness by defendant’s counsel he was asked if he was as certain of the accuracy of his statements regarding the falling of defendant’s arm and his actions when he perceived that he was observed by witness, as he was of the accuracy of his description of the pocket-book; but the United States .objected to said question, and the justice presiding sustained said objection, and refused to permit said question to be put.”
It does not appear from the exception how far the cross-examination had progressed; whether it had been already long and tedious, and how fully all -important matters had already been gone over; nor does it appear that the defendant’s counsel was prepared to show that the description of the pocket-book was not correct We are, therefore, bound to assume that the judge had good reasons for refusing to allow the question to be put. But on general principles, where a question is asked on cross-examination, not directly bearing upon anything that had come out in chief, the effect of which would be to raise a side issue as to an unimportant matter (in this case as to the particular form of the pocket-book) it would be proper for the judge to arrest such a course of examination at once, as a useless consumption of time, tending to no good purpose, and withdrawing the attention of the jury from the issue really before it. The authorities are uniform, that in such a case it is the duty of the court, in the exercise of its discretion to determine how far such cross-examination should be allowed. It is enough to refer to the case of Rea vs. Missouri, in 17 Wall., 532, on this point.
Third. The third exception is this:
“And thereafter, after the testimony on both sides had closed, the court, upon its own motion, proceeded to charge the jury, and said to them in substance and effect that if *112 they believed from the evidence that the defendant was an employee of the Post-office Department, .that the letter described in the first count of the indictment came into the hands of the defendant in the regular course of his duties as such employee, or was accessible to him, and that the defendant took from said letter the money described in the indictment and offered in proof, or any part thereof, they should convict him of the charge contained in said count. To the portion of which charge in which the court said' that if the letter was accessible to the defendant, the said defendant, by his counsel, then and there excepted, and prays the court now for then, to sign and seal this his third bill of exceptions.”
Taking this language literally there is no point in the exception; for there can be no reason why the judge should not have uttered the eight words objected to. Some other ■words must be supplied by.the court here'before the exception becomes intelligible. And if we are to correct the ellipsis to make some sense of it, there is less reason why we should construe it in the way insisted on by defendant’s counsel, than in the way the District Attorney contends it should be understood.
The defendant’s counsel says the judge in effect told the jury that they could convict if they believed from the evidence that the letter described in the first count of the indictment came into the hands of the defendant in the regular course of his duties as such employee of the Post-office Department, or was accessible to him not in an official way. While the District Attorney says the judge told the jury that they might convict, if they found, among other things, that the letter described in the first count of the indictment came into the hands of the defendant or was accessible to him in the regular course of his duties as such employee. We think this reformation of the sentence is more consistent with the general tenor of the court’s rulings, and with the other words in the paragraph; and surely we are rather *113 to presume the judge spoke sense than the reverse. In the case of Coleman vs. Heurich, 2 Mackey, 203, a verbal inconsistency was pointed out between what the judge had said in one particular portion of his charge and what he had said more than once in other portions, and there the court declined to reverse because of this apparently inconsistent lauguage, and addressed itself to reconciling the statements.
Each of these exceptions appear to have been signed in April, but in the following June Judge Montgomery signed a paper which is treated here as his charge; and at the end of the record it is said “ the foregoing bill is signed by consent of counsel, they having agreed to the same.” In that charge the judge used this language:
“You wúll readily see that the establishment of the offense charged in this count involves the necessity of proving:
“First. That the defendant was in the postal service.
“Second. That the letter in question in that count never reached young O’Neal.
“Third. That it was deposited in the post-office and came to the defendant’s hands through the mails.
“Fourth. That it came to him or became accessible to him because of his position or place in the post-office — language utterly inconsistent with the construction contended for by the defendant’s counsel.”
But it is very doubtful whether it was necessary to have averred that the letter came into the traverser’s possession in the regular course of his official duty; because the law punishes “ whoever shall steal, &c., out of any letter which shall have come into his possession either in the course of his official duties or in any other manner whatsoever.”
The case seems to have been tried with care. If we are to credit the testimony set forth in the exceptions, the defendant could scarcely more fully have been proved guilty if he had admitted the charge in open court; and we are satisfied we are doing no injustice when we overrule all these exceptions.
*114 We do not rule upon the further question presented by the District Attorney as to whether Section 803 of the Revised Statutes of the District of Columbia, which enacts that it shall not be necessary, where exceptions are taken from rulings in the trial of a cause, that the judge shall sign and seal the exception, applies to criminal cases.
The judgment below is affirmed.